IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DAVON GRIFFIN,<br><br>　　　　　　Petitioner,<br><br>vs.<br><br>SUPERINTENDENT,<br><br>　　　　　　Respondent. | No. 9:16-cv-00946-JKS<br><br>MEMORANDUM DECISION |

　　　　Davon Griffin, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Griffin in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Riverview Correctional Facility.  Respondent has answered the Petition, and Griffin has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

　　　　On January 13, 2012, Griffin was charged with two counts of third-degree criminal possession of a controlled substance (cocaine) and second-degree assault.  On April 27, 2012, the court held a suppression hearing at which Griffin claimed, among other things, that the cocaine was seized by the police during an illegal search.  The court additionally held an *in camera Darden*[1] hearing, after which the court determined that the confidential informant ("CI") involved in the case against Griffin was reliable and possessed detailed knowledge relevant to the matter.

---

　　　　[1]　　*People v. Darden*, 313 N.E.2d 49 (N.Y. 1974), disapproved on other grounds by *People v. Belton*, 407 N.E.2d 420 (N.Y. 1980).  A *Darden* hearing is a shorthand reference to a hearing under New York law to determine the validity of a warrantless search.

On direct appeal of his conviction, the Appellate Division of the New York Court of Appeals summarized the following evidence presented at the suppression hearing:

> The evidence adduced at the suppression hearing showed that the police in Syracuse arrested a person for illegally possessing hydrocodone pills, and that person thereafter became a confidential source (CS).  Upon arrest, the CS offered to cooperate with the police by arranging a drug transaction with a dealer who previously sold crack cocaine to him.  The police agreed to work with the CS, who, in the presence of the officers, called the dealer on his cell phone to arrange a drug transaction.  Specifically, the dealer agreed to sell one ounce of crack cocaine to the CS for $1,400 in front of Dully's Market on the north side of the city.
> Shortly after that call was made, [Griffin], riding as a passenger in a black Jeep, pulled into the parking lot at Dreams Market, which was around the corner from Dully's Market.  Staked out in the area, a detective observed [Griffin] exit the vehicle and make a phone call.  At that time, the CS received a phone call from the dealer.  The detective testified that he could hear [Griffin] speaking on the phone from approximately 30 feet away, and concluded that he was speaking to the CS, whose end of the conversation he was hearing via the speaker phone of a fellow officer who was with the CS.  At the prompting of the police, the CS told the dealer to drive over to Dully's Market.  Moments later, the black Jeep arrived at Dully's Market with [Griffin] in the front passenger's seat.  The police converged on the vehicle, removed [Griffin] therefrom, and placed him in handcuffs.  In response to questions posed by the officers, [Griffin] admitted that he possessed cocaine, which he said was for his personal use, and a search of his person yielded cocaine and marihuana.  The police also found cocaine on the floor in the front seat of the Jeep.
> After [Griffin] was arrested and placed in the backseat of a patrol vehicle, an officer observed him reaching into the back of his pants.  [Griffin] was therefore removed from the vehicle to be searched more thoroughly, but he broke away and fled on foot.  [Griffin] was apprehended after he tripped and fell, whereupon the officers observed several bags of cocaine on the ground where [Griffin] had been prone.

*People v. Griffin*, 1 N.Y.S. 3d 625, 626-27 (N.Y. App. Div. 2015).

After the suppression hearing, the court issued a written order denying Griffin's suppression motion as follows:

Based upon the credible testimony of Detective Norris provided at the *Mapp*[2] hearing, the court concludes that pursuant to the information provided him by the "confidential source" and the detective's own observations of Mr. Griffin in the area of Wolf and Second North Streets, probable cause existed to arrest Mr. Griffin as soon as Detective Norris overheard the telephone conversation because the "confidential source," as he sat in Sergeant Smith's car, and Mr. Griffin, as he stood on the sidewalk about 30 feet from where Detective Norris was parked.

Detective Norris had already overheard the initial conversation between the "confidential source" and the person he claimed to have previously purchased cocaine on several occasions known to him as "D," wherein it was specifically arranged that the two were to meet at Dully's Market on the north-side of Syracuse that evening to conduct the criminal sale of an ounce of crack-cocaine for the sum of $1,400.00. Upon surveilling that area, the detective observed a Jeep drive into the parking area behind Dreams Market and an individual matching the general description given him by the "confidential source" of "D" exit the vehicle and engage in telephone conversation. Further, the detective was able to overhear both ends of the telephone conversation as he could listen to the "confidential source" over Sergeant Smith's phone and to the other individual standing nearby on the sidewalk. Once they confirmed their meeting at Dully's, it was more probable to Detective Norris than not that the individual in question was "D" and that he was in possession of the ounce of crack cocaine which was to be the subject of the pre-arranged sale. Being possessed of probable cause to arrest this individual, there is no legal requirement that the police allow the actual criminal drug transaction occur before effecting an arrest. Moreover, the fact that [Griffin] was not identified by the "confidential source" does not affect this determination.

Based on the foregoing, therefore, [Griffin's] motion to suppress the drugs recovered by the police from his person, from the ground following [Griffin's] attempt to flee and from the vehicle in which [Griffiin] was a passenger is in all respects DENIED.

Docket No. 12-1 at 149-50.

After the denial of his suppression motion, Griffin requested and received substitution of appointed counsel. On July 13, 2012, Griffin appeared with counsel for the purpose of accepting a proposed plea agreement. Under that agreement, Griffin would plead guilty to the third-degree criminal possession of a controlled substance count in exchange for a 7-year determinate sentence to be followed by a 2-year term of post-release supervision.

---

[2]     *Mapp v. Ohio*, 367 U.S. 643 (1961). The term "*Mapp* hearing" is a shorthand reference to a hearing on whether to exclude evidence obtained as a result of an unconstitutional search and seizure.

At his change of plea hearing, Griffin confirmed his understanding of the proposed sentence and that he had "completely discussed" his case with his attorney and was satisfied with counsel's representation. He further acknowledged that he understood that, as a result of the plea, he would be waiving his right to a jury trial and all the rights that he would otherwise be afforded at a trial, including the right to call and cross-examine witnesses, and testify on his own behalf. He also answered in the affirmative when asked if he understood that his plea was the equivalent to a verdict after trial. Although Griffin acknowledged that he was forfeiting his right to appeal, with the exception of any claim that the sentence is illegal or in violation of the plea agreement, the parties agreed that Griffin had explicitly reserved during plea negotiations his right to appeal the suppression motion and decision. Griffin affirmed that he would admit his prior conviction as a second felony offender. Prior to offering that plea, Griffin stated that he had not consumed alcohol or drugs prior to coming to court that day and had not been forced or threatened to enter the plea agreement. The judge then recited the factual allegations of the charge encompassed in the plea agreement, and Griffin admitted the allegations and pleaded guilty to the charge. The court then stated:

> The Court is satisfied that [Griffin] understands the nature of the charges, the nature of the plea and the possible consequences of this plea; that he's discussed his legal rights with his attorney and he understands he's waiving his constitutional rights as well as his right to appeal and the plea is voluntary and of his own free will. The Court is satisfied [Griffin] acknowledged his guilt, is willing to assume responsibility for it, it's in the interests of justice to accept the plea[.]"

Griffin was subsequently sentenced to the agreed-upon 7-year determinate imprisonment term and 2 years of post-release supervision.

Through counsel, Griffin appealed his conviction, arguing that: 1) the trial court erred in denying his suppression motion; 2) the court erred in failing to conduct a *Huntley*[3] hearing; and 3) the court erroneously sentenced Griffin as a second felony offender.  The Appellate Division unanimously affirmed the judgment against Griffin in a reasoned opinion issued on January 2, 2015.  *Griffin*, 1 N.Y.S.3d at 628.  Griffin sought leave to appeal in the New York Court of Appeals, which was summarily denied on July 28, 2015.  *People v. Griffin*, 37 N.E.3d 1167, 1167 (N.Y. 2015).

Griffin then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on July 27, 2016.  Docket No. 1; *see* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Griffin raises a single claim that the Appellate Division's denial of his suppression motion claim was contrary to clearly established Federal law..

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that

---

[3]  *People v. Huntley*, 204 N.E.2d 179 (N.Y. 1965).  The term "*Huntley* hearing" is a shorthand reference to the hearing held in New York on a challenge to the admissibility of statements made to law enforcement personnel.

contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see*

*also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).  This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.  *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Griffin has not replied to Respondent's answer.  The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952).  Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true.  *United States ex rel. Catalano v. Shaughnessy*, 197 F.2d 65, 66-67 (2d Cir. 1952) (per curiam).

IV. DISCUSSION

A.     Procedural Bars

Respondent urges this Court to dismiss Griffin's Petition on procedural grounds.[4] On direct appeal, Griffin argued, as he does in his Petition, that the court erred in denying his motion to suppress the cocaine seized by the police because the detective's testimony that he overheard Griffin speaking on his cell phone from a distance of 30 feet is incredible as a matter of law. The Appellate Division found that Griffin did not raise that particular contention at the suppression hearing, and thus it was unpreserved for appellate review. *Griffin*, 1 N.Y.S.3d at 627.

Respondent correctly argues that Griffin's claim is thus procedurally barred from federal habeas review as well. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262. In finding the claim unpreserved for appellate review, the Appellate Division relied upon New York's contemporaneous objection rule, New York Criminal Procedure Law ("CPL") § 470.05(2), which has long been considered an "adequate and independent ground" that bars federal habeas

---

[4] In general, a defendant who pleads guilty to a charged offense "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). However, "when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding." *Lefkowitz v. Newsome*, 420 U.S. 283, 293 (1975). Pursuant to New York Criminal Procedure Law ("C.P.L.") § 710.70(2), a criminal defendant may appeal an adverse decision on a pretrial motion to suppress evidence, despite being convicted upon a guilty plea. *See United States ex rel. Sanney v. Montanye*, 500 F.2d 411, 414 (2d Cir. 1974) (holding that habeas petitioner did not waive by guilty plea constitutional claims arising from "illegal interrogation," including a claim challenging admissibility of statements made without *Miranda* warnings). Because he sought to suppress the evidence prior to pleading guilty, Griffin has not waived his right to challenge the admissibility of that evidence through a habeas corpus petition. *See Perez v. Ercole*, No. 09 Civ. 2180, 2010 WL 2541974, at *4 n.3 (S.D.N.Y. June 22, 2010).

review. *See Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011). New York's rule requires that an alleged error be "brought to the attention of the trial court at a time and in a way that [gives it] the opportunity to remedy the problem and thereby avert reversible error." *People v. Luperon*, 647 N.E.2d 1243, 1246-47 (N.Y. 1995). As the record supports that Griffin did not raise this particular contention at the suppression hearing, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and his claim is denied on that basis.

B.   Merits

Moreover, even if Griffin's claim were not procedurally barred, he would not be entitled to relief on it. Griffin contends that the trial court should have suppressed the drugs seized by the police because the police lacked probable cause to arrest him. However, any challenge to the search and seizure is foreclosed by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim,[5]" federal habeas corpus relief will not lie for a claim that evidence recovered through an illegal search or seizure was introduced at trial. *Id.* at 482. The *Stone v. Powell* doctrine applies to all Fourth Amendment claims, including claims of illegal stops, arrests, searches, or seizures based on less than probable cause, and it applies regardless of

---

[5]   The Fourth Amendment provides:

>   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

the nature of the evidence sought to be suppressed. *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam).

The Second Circuit has made clear that all *Stone* requires is that the State provide a petitioner the opportunity to litigate his Fourth Amendment claim. *See McPhail v. Warden, Attica Corr. Facility*, 707 F.2d 67, 69-70 (2d Cir. 1983). In order to receive habeas review of a Fourth Amendment claim, a petitioner must demonstrate either that the State failed to provide any "corrective procedures" by which Fourth Amendment claims could be litigated, or that the State had such procedures in place but that the petitioner was unable to avail himself of those procedures "because of an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992). A "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process," and thus is insufficient to give this Court authority to review Fourth Amendment claims. *Id.* at 72. That New York has in place such procedures is well-settled, and the record reflects that Griffin took full advantage of his opportunity to fully adjudicate the matter in state court. *See id.* at 70 & n.1.

In the memorandum of law accompanying his Petition, Griffin alleges that defense counsel was not supplied with a transcript or summary report of the *in camera Darden* hearing assessing the credibility of the CI. Under New York law, a trial court may conduct an *in camera* interview of an informant when a confidential informant provides police with the only sufficient probable cause to arrest the defendant, and the issue of the informant's identity is raised by the defendant at a suppression hearing. *Darden*, 34 N.Y.2d at 181-82. New York case law provides that, after the hearing, a "'summary report' of the hearing should be made available to defense

counsel and the People, regarding 'the existence of the informer' and the 'communications made by the informer to the police.'" *People v. Edwards*, 741 N.E.2d 876, 879 (N.Y. 2000) (quoting *id.*).  Construing Griffin's *pro se* Petition liberally, *Erickson v. Pardus*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), it appears that Griffin may be arguing that the alleged non-disclosure of the summary report constituted an "unconscionable breakdown" in the state's process.

However, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Cappiello v. Hoke*, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), *aff'd*, 852 F.2d 59 (2d Cir. 1988)(per curiam); *accord*, *Capellan*, 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, such as the bribing of a trial judge, typifies an unconscionable breakdown).  Griffin fails to show that an alleged failure to produce a summary report, even if true, is of such egregious nature as to satisfy this heavy burden.

Furthermore, Griffin cannot avoid the *Stone* bar by phrasing his Fourth Amendment claim and the lack of a summary report in terms of a due process violation.

> A petitioner may not cloak his . . . Fourth Amendment claim in due process clothing to circumvent *Stone v. Powell*. . . .  Due process is a flexible concept, but it cannot be stretched to protect a defendant from every asserted error in a state court's reasoning . . . .  Accepting [the petitioner's] argument would allow habeas petitioners to transmogrify every unsuccessful Fourth Amendment claim into a due process violation.

*Connolly v. Artuz*, 1995 WL 561343, at *7 (E.D.N.Y. Sept. 15, 1995) (quoting *Gilmore v. Marks*, 799 F.2d 51, 57 (3d Cir. 1986), *cert. denied*, 479 U.S. 1041 (1987)).  Griffin is thus not entitled to relief in any event.

C.      Request for Evidentiary Hearing

Griffin alternatively requests an evidentiary hearing. The Supreme Court made clear in *Pinholster* that "review under [28 U.S.C.] § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see Townsend v. Sain*, 372 U.S. 293, 312-13, 319 (1963), *overruled on other grounds by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992), *superceded in part by statute*, 28 U.S.C. 2254(e)(2) (1996). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." *Williams v. Taylor*, 529 U.S. 420, 437 (2000) (quoted with approval in *Pinholster*, 131 S. Ct. at 1401); *see Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (noting that the basic structure of federal habeas jurisdiction is designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions); *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) ("[T]he state trial on the merits [should be] the 'main event,' so to speak, rather than a 'tryout on the road' for what will later be the determinative federal habeas hearing.") "If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case.'" *Pinholster*, 131 S. Ct. at 1399 (quoting *Williams*, 529 U.S. at 413). As the Supreme Court noted, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* Although under *Pinholster* an evidentiary hearing in a federal habeas proceeding is not absolutely precluded, *Pinholster* also made clear that the discretion to grant a request for an evidentiary hearing is cabined by § 2254(e)(2), *id.* at 1400-01, which provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Griffin's request in this case does not meet that standard. Nor, based upon the record before this Court, can it be said that the state courts precluded him from developing the factual basis for his claim. *See Pinholster*, 131 S. Ct. at 1417 n.5 (Sotomayer, J., dissenting) (assuming that the majority did not intend to preclude an evidentiary hearing when the petitioner's ability to develop the facts was the fault of the state court itself). Moreover, AEDPA requires that, in addition to showing diligence in state court, a petitioner must allege a colorable claim for relief in order to obtain an evidentiary hearing. *See Schriro v. Landrigan*, 550 U.S. 465, 474-45 (2007). As discussed above, Griffin has failed to assert a colorable claim for relief. Accordingly, this Court also must deny his request for an evidentiary hearing.

## V. CONCLUSION

Griffin is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing is **DENIED**.

13

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 15, 2018.

                                                 /s/ James K. Singleton, Jr.
                                                 JAMES K. SINGLETON, JR.
                                                 Senior United States District Judge